IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:13-CV-642-FL

GORDON GRAVELLE o/a CodePro )
Manufacturing, )
 )
            Plaintiff, )
 )
      v. )                                    ORDER
 )
KABA ILCO CORP., )
 )
            Defendant. )

This matter comes before the court on defendant's supplemental motion for attorney fees
(DE 98). Plaintiff has not responded and the time to do so has expired. For the reasons that follow,
defendant's motion is granted in part.

## BACKGROUND

Plaintiff pro se commenced this action on September 6, 2013, asserting against defendant
three causes of action for false advertising due to defendant's marketing of its key cutting machine,
EZ Code, as containing several "patent pending" features, under the Patent Act, the Lanham Act,
and the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 et seq.
In addition, plaintiff sought a declaratory judgment declaring unenforceable an arbitration agreement
existing between the parties.

Plaintiff is a sole proprietor operating under the trade name CodePro Manufacturing with its
principle place of business and headquarters located in Ontario, Canada. Plaintiff, as CodePro
Manufacturing, designed and manufactured an electronic key cutting machine, the CodePro 4500.
In or around 2011, plaintiff also began to manufacture a second key cutting machine, the RapidKey

7000. Defendant, a limited liability company organized and existing under the laws of North Carolina with its principal place of business in this state, manufacturers key blanks and key cutting or duplication machines. Plaintiff and defendant have a lengthy history, dating back almost a decade and beginning when defendant purchased from plaintiff the right to manufacture and sell a key cutting machine, now known as the EZ Code.

On November 19, 2013, defendant moved to dismiss the declaratory judgment action pursuant to Federal Rule of Civil Procedure 12(b)(6), which the court granted. Gravelle v. Kaba Ilco Corp., No. 5:13-CV-642-FL, 2014 WL 1513138, at *4 (E.D.N.C. Apr. 16, 2014). The court held that plaintiff's claim asserting the invalidity of the arbitration was barred by claim preclusion as decided by this court previously in a prior case filed by plaintiff. Id. (citing Gravelle v. Kaba Ilco Corp., No. 5:13-CV-160-FL, 2013 WL 5230355, at *5 (E.D.N.C. Sept. 16, 2013), aff'd, 561 F. App'x 267 (4th Cir. 2014)("Gravelle I")).

On July 1, 2015, defendant moved for a court order compelling plaintiff to attend a deposition and to recoup $11,640.00 in expenses incurred in moving to compel plaintiff to attend said deposition. The court granted defendant's motion to compel on August 19, 2015, and granted $3,031.25 in expenses incurred, on December 23, 2015. Gravelle v. Kaba Ilco Corp., No. 5:13-CV-642-FL, 2015 WL 9451047, at *5 (E.D.N.C. Dec. 23, 2015), aff'd, 684 F. App'x 974 (Fed. Cir. 2017).

Defendant moved for summary judgment on December 9, 2015, following a lengthy discovery period. Following a court order enlarging plaintiff's time for filing dispositive motions, plaintiff filed a cross motion for summary judgment on January 21, 2016. On May 9, 2016, this court granted defendant's motion for summary judgment and denied plaintiff's motion for summary

2

judgment.  Gravelle v. Kaba Ilco Corp., No. 5:13-CV-642-FL, 2016 WL 2644890 (E.D.N.C. May 9, 2016), aff'd, 684 F. App'x 974 (Fed. Cir. 2017) ("Gravelle II").  In so holding, the court determined that plaintiff failed to submit evidence sufficient to demonstrate 1) a "competitive injury" under the Patent Act, 2) damages proximately caused by defendant's conduct under the Lanham Act, and 3) injury proximately arising from defendant's conduct as required under North Carolina law. (Id.).

Following the issuance of the court's summary judgment order, defendant filed a motion for attorney fees.  Thereafter, plaintiff filed notice of his appeal to the United States Court of Appeals for the Fourth Circuit and motion to transfer his appeal to the United States Court of Appeals for the Federal Circuit, the latter of which was granted on June 23, 2016.  While plaintiff's appeal was pending before the Federal Circuit, this court granted defendant's motion for attorney fees on July 15, 2016.  Gravelle v. Kaba Ilco Corp., No. 5:13-CV-642-FL, 2016 WL 3920208, at *4 (E.D.N.C. July 15, 2016), vacated, 684 F. App'x 974 (Fed. Cir. 2017).

On April 12, 2017, the Federal Circuit affirmed this court's 1) grant of summary judgment to defendant and 2) grant of defendant's expense reimbursement, but 3) vacated and remanded this court's grant of defendant's motion for attorney fees, concluding "the matter warrants further consideration."  Gravelle v. Kaba Ilco Corp., 684 F. App'x 974, 985 (Fed. Cir. 2017).[1]

In light of the Federal Circuit's ruling on appeal in this matter, the court vacated its prior order granting attorneys fees to defendant and reopened briefing concerning the same, directing

---

[1] On May 1, 2017, plaintiff moved to proceed in forma pauperis in a new action in this court, Civil Action No. 5:17-CV-207-FL, ("Gravelle III"), against defendant and two its former employees, seeking relief again under North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 et seq and under what plaintiff states is the "Competition Act of Canada."  Upon its initial review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), the court dismissed this case on March 6, 2018, for failure to state a claim.

defendant to file a supplemental brief by July 19, 2017 and for plaintiff to file a response by August 2, 2107.

During this time, on May 12, 2017, plaintiff filed a motion for relief from prior judgment pursuant to Rule 60 regarding both his motion for summary judgment and defendant's motion for attorney fees. Plaintiff also sought Rule 11 sanctions against defendant in his reply to defendant's response to this motion.

Defendant filed the instant supplemental motion for attorney fees on July 14, 2017. However, plaintiff failed to file a timely response. Instead, on August 11, 2017, plaintiff filed a motion to extend deadline, requesting the court allow plaintiff to file his response within seven days following the court's ruling on plaintiff's motion for relief, which the court granted on February 28, 2018, also denying plaintiff's motion for relief from prior judgment and request for Rule 11 sanctions. The court directed plaintiff to file his response to defendant's instant supplemental motion for attorney fees by March 13, 2018. Plaintiff failed to do so.

## COURT'S DISCUSSION

A.     Defendant's Supplemental Motion for Attorney Fees

   1.     Attorney Fees under 35 U.S.C. § 285 and under 15 U.S.C. § 1117(a)

The court may award attorney's fees in "exceptional" cases under the Patent Act. 35 U.S.C. § 285. An "exceptional" case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Octane Fitness, LLC v. ICON Health & Fitness, Inc., __ U.S. __, 134 S. Ct. 1749, 1756 (2014). The decision to designate a case "exceptional" is a matter within the court's discretion, to be made on a case by case basis after

considering "the totality of the circumstances." Id.

In assessing the totality of the circumstances, the court's discretion is guided by a nonexclusive list of factors. Those include frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case), and the need in particular circumstances to advance considerations of compensation and deterrence. See id. at 1756 n.6; see also Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994).

The Lanham Act also allows courts to impose attorney's fees in "exceptional" cases. 15 U.S.C. § 1117(a). The Lanham Act and Patent Act utilizes the same standard for imposing attorney's fee. See Ga.-Pac. Consumer Prods. LP v. von Drehle Corp., 781 F.3d 710, 721 (4th Cir. 2015). The Fourth Circuit, in its own summary of the Octane Fitness factors, has held a court may find a case "exceptional, " and therefore award attorney fees to the prevailing party, where it determines, in light of the totality of the circumstances,

> (1) there is an unusual discrepancy in the merits of the positions taken by the parties, based on the non-prevailing party's position as either frivolous or objectively unreasonable; (2) the non-prevailing party has litigated the case in an unreasonable manner; or (3) there is otherwise the need in particular circumstances to advance considerations of compensation and deterrence.

Id. (internal citations and quotation marks omitted). Only one of the three Georgia-Pacific factors must be met.

    a.    Whether the position taken by plaintiff in this case was frivolous or
          objectively unreasonable

When plaintiff brought this action in 2013, the only damages claimed under the Patent Act were as follows: "Plaintiff seeks the maximum statutory award allowed in the amount of $500 per

5

unit sold, which in turn, shall be equally shared with the Federal Government." (DE 1-2 at 19).[2] However, on September 16, 2011, the America Invents Act was signed into law, providing that from that moment, only the United States government could sue for the $500-per-item penalty, while private entities could only sue for compensatory damages, and were required to also prove <u>actual competitive injury</u> from the false marking actions. 35 U.S.C. § 292 (emphasis added).

It appears this point was made clear to plaintiff during the discovery process, as evidenced by his deposition testimony where plaintiff appears to agree to dismiss with prejudice his claim for the $500-per-unit fine. (<u>See</u> DE 55-1 at 169:1-20). However, plaintiff did not move to dismiss his claim and instead asserted, and for the first time on summary judgment, that he had sustained competitive injuries between eight and ten million dollars. (DE 62 at 2, DE 71-8 at 2).

On summary judgment, the court found that this unsupported damage claims, which amounted to a predicted increase in annual sales of approximately 650% over his previous most successful year, implausible, as was plaintiff's contention that he was "forced" to sell the rights to his RapidKey 7000 machine for $20,000, which plaintiff asserted was worth in excess of eight million dollars. <u>Gravelle II</u> at *6.

Although defendant disagrees, these summary judgment findings alone are not sufficient to determine that the position taken by plaintiff was objectively unreasonable. (<u>See</u> DE 100 at 22). As stated by the Federal Circuit, "the assessment of frivolousness in this case, for purposes of attorneys' fees, focuses on . . .what a litigant could reasonably believe would constitute sufficient evidence to allow a reasonable inference of harm caused by the false marking." <u>Gravelle</u>, 684

---

[2] Plaintiff also generally sought under the Lanham Act "Defendants profits arising from sales of the EZ Code; and any and all damages incurred by the Plaintiff, in an amount to be proven at trial," and under North Carolina law, "the amount of damages awarded, be trebled." (DE 1-2 at 21).

F.App'x at 984.  The court found significant that plaintiff "is deeply involved in this market, and he offered his own opinion that customers 'could' be influenced by a 'patent pending marking.'"  Id. The Federal Circuit stated "it is not clear that a person in [plaintiff's] position should be charged with understanding that merely possible influence ('could') is inadequate and that 'influence' cannot be asserted in a wholly general matter, but must be supported by evidence, whether from customers or others, concretely showing how customers would have been influenced by a marking in the specific market."  Id. at 984-85.

Throughout this case plaintiff has fundamentally misunderstood what constitutes sufficient evidence to support a reasonable inference of damage caused by defendant.[3]  Although this misunderstanding was fatal to plaintiff's case, in light of the court's assessment of the totality of the circumstances and the Federal Circuit's direction, the court does not find that plaintiff's position was so objectively unreasonable as to warrant the grant of attorneys fees under this factor.[4]

      b.     Whether plaintiff litigated this case in an unreasonable manner

Defendant argues plaintiff has litigated this case in an unreasonable manner:

> Prior to this Court's entry of summary judgement, [plaintiff] failed to timely respond to [defendant's] written discovery requests.  He refused to provide relevant documents responsive to [defendant's] requests for production, producing only five documents in total, and then attempted to use additional documentation that he did not produce in discovery to support his motion for summary judgment and to oppose [defendant's] motion for summary judgment.  [Plaintiff] also failed to attend a deposition that was properly noticed and on a date that was chosen with his agreement, and continued refusing to attend until this Court forced him to do so.  In

---

[3] It appears that plaintiff has admitted as much, stating to the court that he did not think it necessary to prove damages to his company because he believed, "albeit mistakenly, that he was entitled to disgorgement of profits."  (DE 90 at 7).

[4] This holding departs from the court's previous holding that "[p]laintiff's false marking claim was 'exceptionally meritless.'"  Gravelle v. Kaba Ilco Corp., No. 5:13-CV-642-FL, 2016 WL 3920208, at *2 (E.D.N.C. July 15, 2016), vacated, 684 F. App'x 974 (Fed. Cir. 2017).  Additionally, the court previously did not address the second Georgia-Pacific factor.  Id.

7

short, [plaintiff] was more intent on causing as much trouble for [defendant] as possible, and on increasing the cost of litigation for [defendant] as much as possible, than on efficiently and effectively prosecuting his own action.

(DE 100 at 23). Defendant also argues that the unreasonable manner in which plaintiff has litigated this case has not come to an end in that plaintiff has "filed an unsubstantiated Rule 60 motion, has threatened to file other cases against [defendant] and its employees in different federal courts, and has filed what amounts to a motion for Rule 11 sanctions . . . under the guise of a reply brief in support of his Rule 60 motion." (Id. at 24).[5]

Of particular concern is the way in which plaintiff litigated this case regarding information about his own company. As stated by defendant above, in response to defendants' thirty requests for production of documents, that included inquires into the number of CodePro machines sold, profits realized, sales price, purchasers, and damages suffered, plaintiff produced five documents, none of which revealed information about defendant's business.[6] (DE 42-2). In response to interrogatories seeking the number of CodePro 4500 machines and CodePro 9000 machines sold each year, plaintiff objected to the interrogatories on the grounds that the request was irrelevant and privileged, and refused to provide any information. (DE 42-2 at 12). Plaintiff responded the same to interrogatories concerning the number of employees of CodePro and contractors used by CodePro. (Id. at 13-14). In his deposition, which the court had to compel plaintiff to attend,

---

[5] Defendant has provided to the court an affidavit by Albert Allan, counsel for defendant, stating that plaintiff has multiple times threatened to sue two former employees of defendant and indicated on at least one occasion he would file another lawsuit raising the same claims as those raised in the present lawsuit but on behalf of himself instead of his company. (DE 100-3 at 1-2). Additionally, plaintiff indicated he would file an action against defendant in another circuit that had more favorable law than the Fourth Circuit. (Id. at 2). The court recognizes plaintiff filed an additional suit in this court against the two former employees mentioned. See Gravelle III.

[6] These five documents were a spreadsheet showing unit sales and royalties due to plaintiff by defendant; two brochures for defendant's EZ-Code key-cutting machine; a copy of the operation manual for defendant's EZ-Code machine; and a single email from plaintiff to defendant's counsel, containing three photos of what purportedly was an EZ-Code machine. (DE 42-5).

8

plaintiff was still unable to identify the specific amount of sales, revenue, or profits he earned, stating "you didn't ask me to bring those records, which I could have," indicating these records exist but that plaintiff refused to provide them in response to defendant's requests for production of documents. (DE 100-1 at 118:6-121:12-23; 144: 2-5; 144: 16-23).

It appears that plaintiff is quite willing to use the court system to litigate his grievances with others. In his deposition, plaintiff testified that he has initiated 12-13 lawsuits and plans to file another action against defendant if the court denies his motion to extend discovery; following the court's denial of plaintiff's motion to extend discovery in this case, plaintiff did just that. (See DE 33; DE 36 (denying plaintiff's motion to extend discovery, holding plaintiff cannot demonstrate excusable neglect); DE 100-1 at 15-17; Gravelle III). However, it does not appear that plaintiff is willing to adequately participate in the litigation he commences, committing discovery abuses compounded by a litigation strategy that entails filing new suits with the same claims against the same defendants when plaintiff's claims are not resolved to his satisfaction.[7]

Neither Octane Fitness nor § 285 and § 1117(a) should be used as a second opportunity to impose sanctions that could have been imposed for violation of a party's discovery obligations. However, plaintiff's behavior during discovery is a part of the totality of the circumstances of the manner in which plaintiff litigated this case. Plaintiff's litigation tactics are "uncommon," "rare," and "not ordinary." Octane Fitness, 134 S. Ct. at 1756; see also W. Marine Elecs., Inc. v. Furuno Elec. Co., 764 F.2d 840, 847 (Fed. Cir. 1985) (affirming denial of attorney fees but stating that "bad

---

[7] Indeed, plaintiff first invoked arbitration against defendant in 2011 and was displeased with the result. Thereafter, plaintiff began this series of suits against defendants, first filing a motion to vacate the arbitration award, see Gravelle I, then filing a second suit in part seeking declaratory judgment as to the invalidity of the arbitration agreement, which the court determined it has previously decided, see Gravelle, No. 5:13-CV-642-FL, 2014 WL 1513138, at *4 (citing Gravelle I), then filing a third suit, asserting in part the same claims in Gravelle III as plaintiff asserted in Gravelle II, and seeking relief from the court, in Gravelle III, for the court's holdings in Gravelle II.

9

faith conduct of the litigation can make a case 'exceptional' for purposes of 35 U.S.C. § 285");

Beckman Instruments, Inc. v. LKB Produkter AB, 892 F.2d 1547, 1552 (Fed. Cir. 1989) (affirming district court's finding of "exceptional" based on "strategy of vexatious activity") (emphasis in original).

Plaintiff's litigation behavior renders its case against defendant exceptional under § 285 and § 1117(a). Defendant is therefore entitled to a reasonable award of fees for its defense of plaintiff's claims arising under the Patent and Lanham Acts.[8]

2.      Attorney Fees under N.C. Gen. Stat. § 6–21.5

Under N.C. Gen. Stat. § 6–21.5, the court may impose attorney's fee if it finds that there was a "complete absence of a justiciable issue of either law or fact raised by the losing party in any pleading." N.C. Gen. Stat. § 6–21.5. A "justiciable issue" is one that is "real and present" as opposed to "imagined or fanciful." Sunamerica Fin. Corp. v. Bonham, 328 N.C. 254, 257 (1991) (quoting K&K Dev. Corp. v. Columbia Banking Fed. Sav. & Loan, 96 N.C. App. 474, 479 (1989)). "In order to find complete absence of a justiciable issue it must conclusively appear that such issues are absent even giving the pleadings the indulgent treatment they receive on motions for summary judgment." Id.

Given the court's holding above, that the court does not find that plaintiff's position was so objectively unreasonable as to warrant the grant of attorneys fees under the first Georgia-Pacific factor, the court also does not find a "complete absence of a justiciable issue of either law or fact" raised by plaintiff. Thus, the court declines to grant an award of attorney fees under N.C. Gen. Stat.

_____

[8] Although it is not necessary to address the third Georgia-Pacific factor, whether there is otherwise the need in this case to advance considerations of compensation and deterrence, the court notes the imposition of attorney fees in this case may further the goal of deterring plaintiff from filing claims with the court against this defendant which the court has previously resolved and from not fully participating in the litigation which plaintiff himself has begun.

§ 6–21.5 for defendant's defense of plaintiff's claims arising under § 75-1.1.[9]

CONCLUSION

Based on the foregoing, defendant's supplemental motion for attorney fees (DE 98) is GRANTED IN PART. The court DIRECTS defendant to file any affidavits, time sheets, or other evidence bearing on the court's calculation of the lodestar amount within 30 days from the issuance of this order as to defendant's defense of plaintiff's claims arising under the Patent and Lanham Acts. Plaintiff shall have 21 days to respond to defendant's evidentiary proffer. Such response shall be limited in scope and should address only the reasonableness of defendant's claimed fees.

SO ORDERED, this the 16th day of March, 2018.

LOUISE W. FLANAGAN<br>
United States District Judge

---

[9] The court also declines to grant an award of attorney fees under North Carolina General Statue § 75-16.1 which provides in part fees where "[t]he party instituting the action knew, or should have known, the action was frivolous and malicious."